Wilde J.
delivered the opinion of the Court This is a *231 motion for a writ of certiorari to the mayor and aldermen of the city of Boston, to remove their proceedings in laying out and widening a certain street called Doane street, which proceedings the complainant alleges are erroneous and irregular. To this motion two objections are made on the part of the respondents, —
1. That a writ of certiorari will not lie to the mayor and aldermen, they not being constituted, as it is said, a judicial tribunal.
2. That the proceedings are valid, and in no respect erroneous.
In regard to the first objection, the question is, whether the power vested in the mayor and aldermen as to the laying out and alteration of streets or ways, is judicial or ministerial.
By the statute of 1804, c. 73, the selectmen of the town ot Boston were empowered to lay out or widen any street, ' ‘ whenever in their opinion the safety or convenience of the inhabitants of said town shall require it.” And by the 13th section of the city charter this power is vested in the mayor and aldermen. We cannot doubt that the power thus conferred is judicial, for before the mayor and aldermen can proceed to lay out a new street, or to widen an old one, they are required to adjudicate on the question, whether the safety or convenience of the citizens requires such a laying out or alteration. It is a power similar to that vested in county commissioners in relation to highways, and no reason can be given why a writ ot certiorari should lie to those commissioners, and not to the mayor and aldermen of the city of Boston.
Whether certiorari will lie to quash the proceedings of the selectmen of other towns in the laying out of town-ways, is a question not raised in this case ; for the power vested in the mayor and aldermen is essentially different from that vested in the selectmen of towns. They have only the power to lay out town-ways, but not to establish them. This can only be done by the authority of the town.[1]
It has been contended, that certiorari will not lie to a court newly instituted and empowered to proceed by methods un *232 known to the common law ; and a case from Siderfin was cited ,n suPPort °f this position. This is true as to writs of error, but not as to writs of certiorari. The law seems to be well settled, that certiorari may be awarded to remove the proceedings from any inferior court, whether it be of ancient or newly created jurisdiction ; or whether it proceeds according to the course of the common law or not. Bac. Abr. Certiorari, P>; also Error, J?3, and the cases there cited.
This doctrine was laid down in the case of Groenvelt v Burwell, 1 Salk. 144, in which it was held that certiorari would lie to the censors of the college of physicians. It is more fully reported in 1 Ld. Raym. 469, and appears to have been a case well considered. So it was decided in a case cited in Groenwelt v. Bunuell, that a certiorari would lie to commissioners of sewers. The same principle was maintained in the case of the Caerdiffe Bridge, 1 Ld. Raym. 580, .where the court say they will examine the proceedings of all jurisdictions created by act of parliament, to the end that the court may see whether they keep themselves within their jurisdiction. And in the case of Lawton et al. v. Commissioners of Highways fyc. 2 Gaines’s R. 182, Spencer J. says, that “the authorities to the point decided in the case of the Caerdiffe bridge wrere so numerous and uniform, that it could not be necessary to enlarge.” And he adds, that “ the necessity of a superintending power to restrain and correct partialities and irregularities which may be committed by inferior officers, is so obvious and indispensable, that the court ought by no means to deny themselves a power of such salutary influence.” So in the case of Wood v. Peake, 8 Johns. R. 54, it was held that the appointment of a constable by three justices, they having jurisdiction of the subject-matter, is a judicial act, and remains val id until it is set aside or quashed in the regular course by certiorari. And the same principle is recognised in the case of Wildy v. Washburn, 16 Johns. R. 49. Cases might be multiplied, but it would be useless.
The uniform distinction is between judicial and ministerial acts; the former being only voidable for error, and the latter being merely void if not done in pursuance of lawful authority. And as judicial acts are valid until reversed for error, a *233 writ of error or a certiorari will lie in all such cases. It the proceedings are in a court of record, according to the course of the common law, a writ of error is the proper remedy to reverse or vacate an erroneous judgment, otherwise the remedy is by certiorari.[1]
2. The remaining question is, whether these proceedings are erroneous.
The error assigned is, that the petitioner’s land was taken for the accommodation of private individuals, and not for public uses, in violation of the 10th article of the declaration ot rights.
But this we think has not been made to appear. The record shows that the mayor and aldermen have adjudicated on the subject, and that they expressly resolved that the public safety and convenience required that the street in question should be widened. The sum of 3500 dollars was appropri ated to that purpose, and it does not appear with certainty thai that sum was not sufficient to defray the damages and expen ses resulting from the measure. But if this did appear, it would not prove that the land taken was not appropriated to public use. If the public necessity and convenience required the alteration, it is immaterial at whose expense it was made. A donation or contribution from individuals to relieve the burden upon the city, has no tendency to prove that the enlargement of the street was not a public benefit. A street or highway is not the less public, because it accommodates some individuals more than others, for this is the case in regard to all streets and ways, and is as applicable to Washington street as to the most insignificant lane in the city. All town ways, although in the St. 1786, c. 67, they are denominated particular and private ways, are in truth public highways, for the public without discrimination has the right to use them. And this is true as to all open ways, and it is emphatically true in respect *234 to the streets of the metropolis and other large towns. Nor ,s ^ mater’al at whose expense such streets are laid out or altered. If the legislature should provide for its being done at the expense of the abutters, this clearly would be valid, and no infringement of the 10th article. Such we understand the law to be in New York, and its validity we believe has never been questioned, although it is well known that the principle asserted in our 10th article of the declaration of rights has ever been held sacred by the courts of that State, as a principle of natural justice and universal obligation.
As to the case of Commonwealth v. Sawin, 2 Pick. 547, it is distinguished from this in a most important point. In that case it appeared, that common convenience and necessity did not require the road prayed for to be laid out wholly at the expense of the town ; and it was so adjudged by the Court of Sessions. And it is expressly said in that case, that the Court did not decide that a bond given by an individual interested in a road, to relieve the town, was illegal; but only that such a bargain should not be the basis of an adjudication in favor of a road. And the same distinction is noticed by Parsons C. J. in the case of Commonwealth v. Cambridge, 7 Mass. R. 167. His remarks are applied to streets or ways laid out “ colorably for the use of a town, but really for the benefit of an in dividual.”[1]
In the present case it has been adjudicated in unqualified terms, that the public safety and convenience required that the street in question should be widened. The bond given by Adams and others is not made the basis of the adjudication, and it is impossible for us to determine that it would not have been made, if no such bond had been given. This is matter of conjecture, upon which no certain judgment can be founded. Every presumption is to be made in favor of the regularity of the proceedings, and they are not to be vacated, unless it can be made to appear with certainty that they are irregular or erroneous, and this certainly does not appear. The proceedings of the mayor and aldermen previous to the final adjudication, may well be considered, without giving them *235 s strained construction, as proposals thrown out with a view to piocure aid towards defraying the expenses of the proposed measure, and thus to relieve the city from a part of the public burden ; and in this there was nothing illegal or irregular.[1]
We are therefore of opinion, that there is no error in the proceedings, and that the petition for a certiorari must be dismissed.

 The power of selectmen to lay out highways is not judicial. Robbins v Bridgewater 6 N. Hampsh. R. 524.

 See Bath Bridge &c. Co. v. Magoun, 8 Greenleaf, 293; Rulhman v. Commomoealth, 5 Binney, 27; Phillips v. Phillips, 3 Halsted, 123; Triggs v. Boyce, 4 Hayw. 100; Bob v. State, 2 Yerger, 173; Commonwealth v. Hall, vast, 440; Commonwealth v. West Boston Bridge, 13 Pick. 195; White's Case, 2 Overton, 109; Adams v. Newfane, 8 Vermont R. 271; Robbins v. Bridgu water, 6 N Hampsh. R. 524.

 See Dudley v. Cilley, 5 N. Hampsh. R. 558; The Third Turnpike V Champney, 2 N. Hampsh. R. 199.

 Where a sum of money was subscribed by certain individuals for the purpose of defraying a portion of the cost of a town-way, and this fact was communicated to the inhabitants of the town, before the town-way was approved, it was held, that the vote of approval was not rendered invalid thereby. Copeland v. Packard, 16 Pick. 217. See Jones v. Andover, 9 Pick. 146, Freetown v. Bristol County Commissioners, 9 Pick. 46.